NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

EMMA L. MAPES, PETITIONER, v. D. STEPHEN THRALL,
DOING BUSINESS FOR THE NATIONAL CASH REGIS-
TER CO., RESPONDENT.

Decided October 19, 1939.

For the petitioner, *David Roskein*.

For the respondent, *Cox & Walburg* (by *Arthur Mead*).

\*     \*     \*     \*     \*     \*     \*

From the testimony adduced, and the stipulations of coun-
sel, I find that on October 14th, 1936, Alfred B. Mapes, hus-
band of the petitioner, was in the employ of D. Stephen
Thrall, doing business as the National Cash Register Co., as
a repair man and mechanic. In the early morning of that
day, about 9:30 A. M., decedent arrived at the place of busi-
ness of L. W. Johnson, Incorporated, at 4 Washington street,
East Orange, New Jersey, a customer of his employer, for
the purpose of repairing a cash register located at the cus-
tomer's store premises.

After attempting to make such repairs unsuccessfully for
about twenty minutes to one-half hour he indicated that it
would be necessary to remove this register to his employer's
place of business for further repairs and that the decedent
would substitute in its place a register which he had brought
along in an enclosed body, suburban type, delivery truck,
which was parked on the street in front of the customer's store.
The decedent advised Fred W. Johnson who was in charge of

the store, that he, the decedent, would have to move some of the registers which were located within the truck, in order to get the one which was to be substituted for the customer's register requiring repairs, and further requested the said Mr. Johnson to be available to lend a hand in carrying same in from the truck to the store. Accordingly the decedent left the store, proceeded to the street where the truck was stationed, opened the back doors thereof and was seen reaching into the interior with his extended arms, upper body, shoulders and head. One of his legs was raised backwards off the ground and his entire body from the waist up seemed to be within the interior of the truck. He was then observed to remain in this position with his body, shoulders, head and extended arms bent forward, reaching into the interior thereof and one of his legs raised backwards and upward from the ground, for a period of about five minutes. The witness Johnson and another witness Olson, observing this unusual posture which did not appear to change, walked to the rear of the truck and found the decedent with both arms around a cash register which was about one and a half to two feet from the back end of the truck, and his head resting on its keys or keyboard. He was found to be breathing hard, his face was blue, bloated and his tongue was sticking out. With the exception of a slight movement of one of his arms, he did not move thereafter, remaining in that position, until the police arrived and the ambulance surgeon pronounced him dead.

The register about which the decedent had his arms and on which his head was resting, was the register which was to be taken into the customer's store and weighed about two hundred and forty pounds. The position in which this register was found was such as to indicate that it had been moved to that position from elsewhere within this truck by the decedent. The witness, the police officer, stated that the rear doors of the truck could not be closed because of the position of this register at the rear end of the truck and also testified that there were other registers therein located but that they were all nearer to the front end and side thereof. Others testified that the machine over which the decedent was found slumped,

was near the back or rear of the truck while the other registers within the vehicle were stationed on the front end or side behind the driver's seat. The witness Johnson also testified that he saw the decedent in the act of moving registers from the interior of the truck towards the rear end performing this operation by means of his extended arms and body inside the truck while the decedent stood on the street at the rear of the truck with one of his legs raised backwards and upwards.

Dr. George P. Olcott, Jr., assistant medical examiner for Essex county, arrived shortly after this occurrence, and had the body removed to the morgue where he performed an autopsy. Dr. Olcott testified that the decedent's heart on autopsy showed definite signs of a chronic myocarditis which unquestionably was of long duration and pre-existed the date of the accident. He furthermore found the heart to be flacid, that it showed replacement of a considerable amount of its normal tissue with fibrous tissue, was of a greyish cast in color, brittle, thinned out and the chambers of the heart were relaxed. He described the condition which he found, as a dilatation of the ventricle of the heart. The medical examiner was of the opinion that the dilatation of the ventricle of the heart, as he found it on autopsy, indicated that an exertion had precipitated the decedent's death. He was of the further opinion that the exertion of moving the cash register would undoubtedly be and was such an exertion as to cause the dilatation of the decedent's heart and the ensuing death.

Dr. Asher Yaguda also testified on behalf of the petitioner. He stated that the cause of the decedent's death was an acute dilatation of the heart due to an over-exertion and that in all probability the over-exertion was the moving of the heavy cash register which his arms encircled and upon which he was found dead. There was no medical or lay testimony offered by the respondent. There is no doubt in my mind; and the proofs more than adequately support the fact, that the decedent was suffering from a chronic myocarditis prior to and on the date of his death. Dr. Olcott's findings and autopsy are to this effect. The undisputed evidence is conclusive that the over-exertion of the decedent in moving the

heavy cash registers, including the one designated for the Johnson store, was the cause of the acute dilatation of the heart and the precipitating cause of his death and I so find.

The rule of law applicable to the situation here presented was enunciated in *Bernstein Furniture Co.* v. *Kelly*, 115 *N. J. L.* 500; 180 *Atl. Rep.* 832, to be that an accidental strain of a heart, which was previously weakened by disease, may be a compensable injury under our statute where the accident arose out of and in the course of the employment. There the decedent's work was that of delivering and moving furniture and while delivering some furniture from a truck he carried a heavy settee up several flights of stairs to the fourth floor of a house where the furniture was to be delivered, put it down at a designated point within the apartment, went over to the window, slumped over and died. There was no impact or striking of his body or head as he fell. This occurrence was held by our court of last resort to be an accident within the meaning of the Workmen's Compensation act and that the death was held to be one resulting from an accident arising out of and in the course of the employment.

In *Hentz* v. *Janssen Dairy Corp.*, 122 *N. J. L.* 494; 6 *Atl. Rep. (2d)* 409, the deceased, employed as a milk truck driver and delivery man, while ascending a hill to return to his truck after making a delivery, felt a sharp pain in his side. It appeared that he suffered a coronary thrombosis and died shortly thereafter. The Court of Errors and Appeals held that there was no doubt that he suffered a strain of the heart in the course of his employment and that it made no difference that his heart had been weakened by the strain of work over a long period of time prior to the occurrence. An award of compensation was granted to his widow. Similarly the same court ruled in *Bollinger* v. *Wagaraw Building Supply Co.*, 122 *N. J. L.* 512; 6 *Atl. Rep. (2d)* 396, that death from disease alone *during* the employment will not suffice but injury or death which on proofs that are sufficient and persuasive, would not have occurred but for the services rendered in the employment, amount to injury by accident.

The undisputed proofs in this case clearly indicate and I find, that but for the efforts that were put forth by the dece-

dent in moving the cash registers on the day in question, and the exertions expended by him incident thereto, his death would not have occurred at the time, date and place that it did occur. The uncontroverted medical testimony adduced by the petitioner in this regard, adequately supports this conclusion. The evidence presented on behalf of the petitioner, clearly indicates that the exertion and strain which the decedent engaged in at the time that he endeavored to and did move one or more of the registers within the delivery truck, are related and connecting links in a chain of causation that resulted in the heart attack and death, and I so find.

\*          \*          \*          \*          \*          \*          \*

HARRY S. MEDINETS,
*Deputy Commissioner.*